# UNITED STATES DISTRICT COURT
## NORTHERN DIVISION OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

DONN BROWN,           )
           )
    **Plaintiff,**      )
           )
    **v.**           )    **Cause No. 4:08-CV-69-WCL-APR**
           )
**CITY OF LAFAYETTE,** *et al.*,  )
           )
    **Defendants.**    )

## MEMORANDUM OF OPINION AND ORDER

*Pro se* Plaintiff Donn Brown ("Brown") filed a complaint on February 28, 2008, in Tippecanoe County Circuit Court (docket at 1), as amended on August 29, 2008 (docket at 2) and February 17, 2009 (docket at 11) ("Am. Complaint"). The case was removed pursuant to 28 U.S.C. §§ 1441, 1446 (docket at 5), and jurisdiction is established pursuant to 28 U.S.C. §§ 1331, 1367.

Brown alleges that Defendants City of Lafayette ("Lafayette") and Lafayette council members Kevin Klinker, Ron Campbell, Lon Heide, Steve Meyer, Melissa Weast-Williamson, Michael Smith, Jack Rhoda, Perry Brown, and Dennis Probasco (collectively "council members") violated his First Amendment rights under 42 U.S.C. § 1983 by attempting to silence him at a council meeting and by engaging in a conspiracy to "shut [him] up." (Am. Complaint ¶¶ 21-29). Brown also alleges that council member Kevin Klinker ("Klinker") retaliated against Brown for exercising his free speech rights, communicated defamatory information about Brown, and tortiously interfered with a business relationship, by contacting Brown's employer, CityBus, regarding his participation in the council meetings. (Am. Complaint ¶¶ 21-43). In response, the Defendants admit that the council members were state actors acting in their individual capacity under color of law

within the meaning of § 1983, that the Lafayette City Council is an official body of Lafayette, that Lafayette is a municipal corporation of Indiana, and that CityBus is a private corporation that receives subsidies from Lafayette. (Am. Answer ¶¶ 21-24).

Now before the Court for resolution is the Motion for Summary Judgment (docket at 21) and supporting materials (docket at 22-26) filed by the Defendants seeking judgment in their favor on all claims. In opposition to the motion, Brown filed a response (docket at 30), a statement of genuine issues (docket at 31), and a tender of evidence (docket at 32). Defendants filed their reply (docket at 34), and also filed a Motion to Strike (docket at 33) portions of Brown's tender of evidence, to which Brown responded (docket at 36), and the Defendants replied (docket at 37).

Holding Brown's *pro se* pleadings to a less stringent standard than those drafted by attorneys, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001), and for the reasons discussed herein, the Court **DENIES IN PART and GRANTS IN PART** Defendants' Motion to Strike, **GRANTS** Defendants' Motion for Summary Judgment as to Brown's federal law claims, and **REMANDS** Brown's state law claims to state court.

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255 (1986); *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of informing the court of the basis for the motion and identifying the evidence that demonstrates an absence of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if the nonmoving party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment is proper. *Celotex*, 477 U.S. at 323.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewco Secs. Corp.,* 860 F.2d 1407, 1411 (7th Cir. 1988). No genuine issue for trial exists "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita*, 475 U.S. at 587).

Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). But if it is clear

that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322.

## FACTUAL BACKGROUND[1]

This lawsuit involves Plaintiff Donn Brown's opposition to a yet-proposed smoking ban ordinance in Lafayette and events that follow his activism. On October 1, 2007, Brown attended a Lafayette City Council ("council") meeting where all of the Defendant council members were present, with the exception of Dennis Probasco. (Am. Complaint, Am. Answer ¶¶ 2, 4). During the public comment portion of the meeting,[2] Brown spoke for three minutes and thirty seconds in opposition to proposing a smoking ban ordinance in Lafayette. (Am. Complaint, Am. Answer ¶¶ 2, 3; Plf.'s Aff. ¶ 3; Chosnek Aff. ¶ 2, Exb. 3, manually filed, recording 18:35-22:05 ("Recording A")). Brown expressed his belief in the concept of limited government, the right of business owners and consumers to decide, and the importance of this public concern in light of the upcoming election on November 6 for council seats. (Recording A, 18:35-22:05). Brown invited everyone to attend an informal public debate on the topic of a smoking ban and passed out literature on secondhand smoke to the mayor, the council members, and to the council candidates. (Plf.'s Aff. ¶ 3; Recording A, 18:35-22:05).

---

[1]Evidence presented by Brown, which is the subject of Defendants' Motion to Strike based on hearsay grounds (docket at 33), is admitted or excluded as indicated in this fact section.

[2]Brown alleges that a Lafayette clerk's office employee informed him that the council allowed public comment on any issue during the public comment section of a meeting, whether or not the issue is on the agenda. (Am. Complaint ¶ 18; Plf.'s Aff. ¶ 2). Defendants baldly deny having this policy (Am. Answer ¶ 18) without providing evidence to support the denial. Therefore, the Court assumes that the public comment portion of the council meetings allowed comment on any issue without established restrictions.

As the chairman of the council's transportation committee, Klinker telephoned CityBus'

Development Manager John Metzinger ("Metzinger") to discuss Brown, who was employed as a

bus operator for CityBus. (Am. Complaint, Am. Answer ¶¶ 5-6; Plf.'s Aff. ¶¶ 4, 12; Metzinger

Depo., p. 5, 8). Brown believes that Klinker "asked" if Brown was "emotionally stable" during the

conversation, but Metzinger could not recall whether Klinker did so.[3] (Am. Complaint, Am. Answer

¶¶ 7-8, 17; Plf.'s Aff. ¶ 13; Metzinger Depo., p. 14, 16). However, Klinker did characterize Brown's

tone and demeanor at the council meeting as "threatening." (Plf.'s Aff. ¶ 13; Metzinger Depo., p.

14, 16, 19, 22, 25, 32). Defendants admit this characterization,[4] but claim that Klinker did not say

he was physically afraid of Brown. (Docket at 22, Defs.' Memo. in Support, p. 2) (citing Metzinger

Depo., p. 14). Yet Metzinger's testimony, upon which Defendants rely, reveals that Klinker could

have referred to Brown as a physical threat due to his tone, or a political threat due to his publically

opposing council members and candidates that supported a smoking ban. (Am. Complaint, ¶ 9; Plf.'s

Aff. ¶ 13; Metzinger Depo., p. 13, 25, 32).

Metzinger's first impression of Klinker's phone call was to question whether Klinker wanted

Metzinger to "quiet" Brown or intervene with Brown's right to speak before the council.[5] (Plf.'s

---

[3]As raised by Defendants' Motion to Strike (docket at 33 ¶ 2), whether Klinker actually questioned Metzinger about Brown's emotional stability is not supported by Metzinger's deposition and constitutes a fact clearly outside of Brown's personal knowledge. As such, the Court limits its admissibility to Brown's honest belief that Klinker asked if Brown was emotionally stable, which explains Brown's reaction to what he believed to be true. *See Brill v. Lante Corp.*, 119 F.3d 1266, 1271 (7th Cir. 1997).

[4]The Defendants state the following in their Memorandum in Support of Summary Judgment: "Klinker indicated that he thought Brown's demeanor at the Council meetings was threatening." (Docket at 22, Defs.' Memo. in Support, p. 2) (citing Metzinger Depo., p. 14).

[5]Defendants suggest that Metzinger did not give his impression of the conversation with Klinker (docket at 33 ¶ 2), but Metzinger did (Metzinger Depo., p. 35), and the testimony is admitted.

Aff. ¶ 14; Metzinger Depo., p. 35).  Uncomfortable with the call, Metzinger expressly asked Klinker if Klinker wanted him to limit Brown's free speech rights, and Klinker responded that he absolutely did not. (Metzinger Depo., p. 15, 24, 34-35).  Metzinger assured Klinker of Brown's credible character as a citizen and as a valued employee, and thereafter, Klinker "joked" that he supposed a restraining order would not be necessary.[6] (Am. Complaint, Am. Answer ¶¶ 10, 17; Plf.'s Aff. ¶ 13; Metzinger Depo., p. 16, 25-26).  Despite this joke (which further supports Klinker's having felt physically threatened), Metzinger did not believe that Klinker made derogatory comments about Brown's "personhood," accused Brown of committing a crime, or suggested that Brown was untrustworthy. (Metzinger Depo., p. 14, 25).

Although CityBus was informed of Brown's public opposition to a smoking ban proposal, Brown never suffered a change in his CityBus job duties, a reduction in pay, lost promotions, or any other adverse employment action. (Metzinger Depo., p. 11).  However, Metzinger did personally speak with Brown after Klinker's phone call to verify that Brown's political activities were being done off duty, out of uniform, and without any connection to his role as a CityBus employee.[7] (Plf.'s Aff. ¶¶ 5-7; Metzinger Depo., p. 20-21).  Metzinger advised Brown that he would likely be better received by the council if he presented himself civilly, without appearing negative or overly passionate. *Id.*

On November 5, 2007, Brown informed CityBus' Operations Manager John Connell that he

---

[6]Defendants suggest that Metzinger did not testify as to Klinker's joking or asking about getting a restraining order (docket at 33 ¶ 2), but Metzinger did (Metzinger Depo., p. 16, 25-26), and the testimony is admitted.

[7]Per Defendants, as a governmental employee any political activity by Brown during work could violate state law. (Docket at 22, Defs.' Memo. in Support, p. 3) (citing I.C. § 35-44-2-4).

planned to attend the council's scheduled meeting that evening, oppose the smoking ban, and address Klinker's phone call to Metzinger. (Plf.'s Aff. ¶ 15). Minutes later, Metzinger and Connell called Brown into Metzinger's office and "spent the next 30 minutes trying to convince [Brown] not to go public with the phone call."[8] *Id.* Brown expressed his belief that not only was the phone call inappropriate, but it was especially improper for Klinker to indicate that he felt threatened, and to have questioned Brown's emotional stability when bus operators are required to pass a bi-annual fitness determination (which requires employees to state whether they suffer from any nervous or psychiatric disorder). (Plf.'s Aff. ¶ 15, Exb. 7). Metzinger responded by giving Brown a business card with Klinker's name on it and asked that Brown speak with Klinker privately. (Plf.'s Aff. ¶ 15). Brown indicated that he would consider the request, but he also believed that the public had a right to know of the possible repercussions for speaking at a council meeting. *Id.*

Brown attended the council meeting on November 5, where all of the Defendant council members except Probasco were present, and spoke out against the smoking ban proposal during the designated public comment portion of the meeting. (Am. Complaint, Am. Answer ¶ 11; Plf.'s Aff. ¶ 17; Chosnek Aff. ¶ 2, Exb. 4, manually filed, recording 10:05-29:30 ("Recording B")). Brown conveyed his disappointment that council members and candidates in support of a ban did not show-up for the public debate that he organized, and then Brown discussed secondhand smoke research, certain agendas, and individual rights. (Recording B, 10:05-22:20). After speaking for

---

[8]Defendants move to strike on the basis of inadmissable hearsay, statements that Connell allegedly made to Brown, including Connell's asking whether Brown would have preferred to be called crazy and stating that Brown put himself "out there" to be criticized and that it was "just politics." (Docket at 33 ¶ 3) (citing Plf.'s Aff. ¶ 15). The Court grants the Motion to Strike as to these particular statements because Brown seeks to introduce the information for the truth of what was told to him, and it is clearly hearsay and does not fall within any of the hearsay exceptions. *See* Fed. R. Evid. 802.

approximately twelve minutes and reiterating the importance of the council's obligation to make objective and informed decisions, Brown attempted to read a local newspaper article containing comments made by council members and candidates which concerned the smoking ban proposal.[9] (Am. Complaint, Am. Answer ¶ 12; Plf.'s Aff. ¶ 18, Exb. 2; Recording B, 22:20-22:35). At this point, Lafayette's attorney, Ed Chosnek ("Chosnek"), interrupted Brown and stated that while this was an opportunity for Brown's public comment as it relates to a smoking ban, it was not appropriate to make comments about candidates running for office the night before council elections. (Am. Complaint, Am. Answer ¶¶ 13-14; Plf.'s Aff. ¶ 18; Recording B, 22:35-23:02). Brown responded that his right to free speech was being violated by prohibiting him from repeating the newspaper articles, and Brown asked Chosnek whether he was "telling" or "asking" Brown not to read the articles. (Am. Complaint, Am. Answer ¶ 15; Plf.'s Aff. ¶ 18; Recording B, 23:02-23:15). Chosnek answered that he was "asking" Brown not to do so, and continued by explaining that while the council tries not to interrupt public comment, as a public body it can place some limitations on comments. (Plf.'s Aff. ¶ 18; Recording B, 23:02-23:15). Council member Mike Smith interrupted Chosnek and asked if anybody had a problem with Brown making public comments on items already publically commented on (in the news article), because Smith did not. (Plf.'s Aff. ¶ 18; Recording B, 23:25-23:35). Council member Steve Meyer protested that the issue was not on the agenda for the meeting, and despite his respect for Brown's right to speak to the council on any topic, he asked

---

[9]The Court denies the Motion to Strike (docket at 33 ¶ 4) the article entitled "Candidates say push for smoking ban in city's future" (docket at 32, Exb. 2), because the article is not admitted for the truth of the matters reported. Instead, this article is admitted as evidence that the article was printed in the Lafayette Journal and Courier on September 20, 2007, and that it contained information about the smoking ban (regardless of its accuracy), which Brown attempted to read aloud at the council meeting on the evening of November 5. (Docket at 31 ¶ 17). For this purpose, this article is not hearsay and is admissible evidence.

Brown to limit the debate on the smoking ban this evening and address it once a specific smoking ban proposal gets presented to the council. (Plf.'s Aff. ¶ 18; Recording B, 23:35-24:35).

In response, Brown stated that he would finish up, decided to "skip that point," and then spoke almost five more minutes without any interruption from the council.[10] (Recording B, 24:45-29:30). After voicing his concerns about socialism and liberalism, Brown reflected that despite his "polite" demeanor currently before the council (and similarly in October according to others who told Brown that he was polite),[11] a council member called his employer and questioned whether Brown was emotionally stable because the council member felt threatened and asked whether he should get a restraining order.[12] *Id.* Brown advised that the council should be concerned about this occurrence because the council member should not be intimidating his employer, knowing that

---

[10]In his complaint, Brown alleges that the council "refused to allow [him] to read said quotes" from the articles, but that he "continued his public comment by informing the Lafayette City Council" of the council member's phone call to his employer. (Am. Complaint, Am. Answer ¶¶ 16-17).

[11]Defendants seek to strike on the basis of inadmissible hearsay, television news broadcasts aired on October 1-2 and November 5-6, 2007 by WLFI-TV news channel 18 in Lafayette. (Docket at 33 ¶ 4) (citing docket at 32, Exb. 3, manually filed, p. 28, WLFI record custodian's certification of business records). The broadcasts show visual snippets of Brown speaking before the council on October 1 and November 5 in opposition to a smoking ban proposal. *Id.* Brown seeks to admit the broadcasts not for the truth of their content, but as evidence that he appeared "polite and respectful beyond reproach." (Docket at 31 ¶¶ 1, 12). While cumulative to the council meetings' audio recordings (recordings A and B), these broadcasts offer brief visual representations as to Brown's appearance and respectful demeanor, and are admitted for that purpose.

[12]Defendants move to strike on the basis of inadmissible hearsay, newspaper articles discussing the instant lawsuit, Brown's opposition to a smoking ban proposal, Klinker's reactions to Brown's opposition, and public opinions on the incident. (Docket at 33 ¶ 4) (citing docket at 32, Exbs. 4, 9). Because Brown is introducing these articles for the truth of the facts reported (docket at 31 ¶¶ 7, 15), they are hearsay, not admissible, and are stricken from the summary judgment record. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (noting that hearsay, such as newspaper articles, is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial).

CityBus has to go through the council for approval of issues and the receipt of city funding. (Plf.'s Aff. ¶¶ 9-11; Recording B, 24:45-29:30). After Brown finished speaking and just before the council's adjournment, a council member commended Brown for his demeanor before the council. (Recording B, 29:30-29:45).

On April 7 and May 5, 2008, Brown again attended council meetings and spoke in opposition to the smoking ban ordinance that was actually being considered by the council at the time. (Chosnek Aff. ¶ 2, Exb. 5 at 3, Exb. 6 at 3). Despite Brown's opposition, and the support of others sharing Brown's position, the council passed an amended smoking ban ordinance on May 5 by a 7-1 vote, with Heide, Klinker, Meyer, Weast-Williamson, Novak, Cornstuble, and Downing voting in favor of the ban. (Chosnek Aff. ¶ 2, Exb. 6 at 3).

## DISCUSSION

### I. Individual Liability Under 42 U.S.C. § 1983

Section 1983 creates a cause of action to remedy certain deprivations of federal rights, but it is not a source of substantive rights. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To bring a successful § 1983 action, Brown must establish that the council defendants have deprived him of a right secured by federal law or the Constitution while acting under color of state law. 42 U.S.C. §1983; *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 471 (7th Cir. 1997). The parties in this case do not dispute that the council members were state actors acting under color of state law during the events at issue; rather, the parties dispute whether the facts alleged set forth a deprivation of Brown's constitutional rights.

Liberally construing Brown's *pro se* complaint, Brown appears to claim that the council

members, individually, violated his First Amendment rights under 42 U.S.C. § 1983, as follows: (1) by not allowing him to read the newspaper article during the public comment section of the council meeting on November 5; (2) by engaging in a "conspiracy" to shut him up at the same time; and (3) by retaliating against Brown for speaking at the October 1 council meeting based on Klinker's informing CityBus about Brown's political activism. Defendants do not raise any affirmative defenses, but oppose Brown's claims on the merits.

### A. Freedom of Speech During Council Meeting

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. The First Amendment's protection of freedom of speech against government intrusion is applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. *Edwards v. S.C.*, 372 U.S. 229, 235 (1963) (citation omitted). In the context of the First Amendment, the extent to which the government can limit public expression depends on the nature of the property at issue, whether it is a traditional public forum, a designated public forum, or a nonpublic forum. *DeBoer v. Vill. of Oak Park,* 267 F.3d 558, 565 (7th Cir. 2001) (citing *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 800 (1985)). A traditional public forum is property that has long been devoted to assembly and debate, such as a street or a park; a designated public forum is property that the government has purposefully provided to the public for expressive activity; and, all remaining government property is considered a nonpublic forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983).

In traditional and designated public forums, the government's ability to restrict speech is limited. *Id.* at 45-46. Any content-based restrictions are subject to strict scrutiny and must serve a

compelling state interest and be narrowly drawn to achieve that purpose. *Id.* The government may also impose "[r]easonable time, place and manner regulations that are content-neutral" which serve a significant government interest and leave open "ample alternative channels of communication." *Id.* For a nonpublic forum, the standard is lower, requiring that restrictions merely be reasonable, and not adopted because public officials oppose the speaker's view. *Id.* at 46.

It is undisputed that Brown's speaking out against a smoking ban proposal during Lafayette's October 1 and November 5 council meetings implicated the First and Fourteenth Amendments. *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (a major purpose of the First Amendment was to protect the free discussion of governmental affairs, as the debate on public issues should be "uninhibited, robust, and wide-open.") (citations omitted). There is also no dispute that the public comment portion of the council meetings constituted limited public forums. *See Perry Educ. Ass'n*, 460 U.S. at 45. However, Defendants argue that the fundamental flaw in Brown's case is his inability to raise an issue of material fact concerning his suffering a First Amendment violation during the course of the council meetings. The Court agrees.

This case is not like other cases, where during the course of a council meeting the speaker is not allowed to speak or even enter the meeting, *see Vergara v. City of Waukegan*, 590 F.Supp.2d 1024, 1032-35 (N.D. Ill. 2008); the speaker is denied recognition while other citizens are recognized and are permitted to speak, *see Smetanka v. Borough of Ambridge, Pa.*, 378 F.Supp. 1366, 1370-71 (W.D. Pa. 1974); the speaker is interrupted and then threatened with a penalty or forced to leave the meeting should he continue speaking, *see Collinson v. Gott*, 895 F.2d 994, 996-97 (4th Cir. 1990); *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995); *White v. City of Norwalk*, 900 F.2d 1421, 1423 (9th Cir. 1990); *Kirkland v. Luken*, 536 F.Supp.2d 857, 862 (S.D. Ohio 2008);

or, the speaker is limited to discussing the issues on the agenda, limited to a restricted time frame, or limited to speaking at specified times during the meeting based on preestablished rules, *see Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 281 (3d Cir. 2004); *Wright v. Anthony*, 733 F.2d 575, 576-77 (8th Cir. 1984); *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1202 (10th Cir. 2007); *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004); *I.A. Rana Enters., Inc. v. City of Aurora*, 630 F.Supp.2d 912, 919-20 (N.D. Ill. 2009). Instead, this is a case of a speaker who is interrupted and then allowed to continue speaking freely, without any actual constitutional violation occurring.

Brown appeared at his first council meeting on October 1, and spoke in opposition to a smoking ban proposal without interruption. At his second council meeting appearance on November 5, Brown spoke for twelve minutes without interruption. When Brown began reading an article about council members and candidates' positions on the smoking ban, both in favor of and against the ban, Brown was interrupted by Chosnek's disagreement with discussing council candidates on the night before council elections. However, Chosnek expressly stated that he was only "asking" Brown to refrain from discussing the candidates. Brown was then encouraged by another council member to continue reading the articles if he wanted to, while another council member requested that Brown keep his comments brief. Brown was also encouraged to speak on the smoking ban topic again, once a proposal was presented.

Although Brown asserts that the council kept him from reading the article or from discussing comments made by council members and candidates (Am. Complaint ¶ 16), the record, including the audio recording of the November 5 council meeting, simply do not support Brown's assertion. After the initial interruption by a non-named Defendant, Brown admitted that he "continued his public comment" by skipping certain points he chose to skip, by speaking broadly about socialism

and the disease that is infecting the country, and by informing the council of Klinker's phone call to CityBus. (Am. Complaint ¶ 17). While the Court acknowledges the sensitive nature of constitutionally protected expression and realizes that the mere threat of sanctions may deter the free exchange of ideas, *Dombrowski v. Pfister,* 380 U.S. 479, 486 (1965), no such threat of sanction, removal, arrest, or intrusion on Brown's right to continue reading the article occurred. Brown's discourse with the council was not inhibited in any way. He remained free to express his views and publicly criticize the council when he continued speaking after the brief interruption; and in fact, he did so.

Here, there is no conduct on which to base a constitutional violation. An attempt to violate constitutional rights is not actionable; there must be an actual violation of the right. *Andree v. Ashland County*, 818 F.2d 1306, 1311 (7th Cir. 1987) ("the mere attempt to deprive a person of his First Amendment rights is not, under usual circumstances, actionable under section 1983") (relying on *Reichenberger v. Pritchard*, 660 F.2d 280, 285, 287 (7th Cir. 1981) ("despite the defendants' alleged interference . . . . the plaintiffs have suffered no injury or deprivation of constitutional rights as long as their expressive activity continues"); *Goldschmidt v. Patchett*, 686 F.2d 582, 585 n.1 (7th Cir. 1982) (section 1983 does not reach a threat of deprivation of free speech where "the plaintiff continued his advertising" without any "chilling effect") (Swygert, J., concurring)). Because the evidence as viewed in Brown's favor does not support a violation of his First Amendment right to speak freely during the November 5 council meeting, summary judgment is appropriate in favor of all of the Defendants on this claim.

## B. Conspiracy to Curtail Freedom of Speech During Council Meeting

Brown claims that the Defendants engaged in a conspiracy to violate his right to speak during

the November 5 council meeting. Specifically, Brown alleges that the council members engaged in a "spontaneous conspiracy to shut [him] up." (Docket at 31 ¶ 17). For Brown to establish a *prima facie* case of civil conspiracy, he must show (1) an express or implied agreement among Defendants to deprive him of his constitutional rights; and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Brown's conspiracy claim fails on both prongs of the *prima facie* case.

The Court has determined that no violation of Brown's First Amendment rights occurred during the course of the council meeting, thus precluding his conspiracy claim. *See Goldschmidt*, 686 F.2d at 585 (§ 1983 does not punish a conspiracy, but the actual denial of a constitutional right is necessary). Moreover, Brown has set forth no facts, circumstantial or otherwise, to suggest the existence of any agreement among any of the Defendants. As such, Brown's conspiracy claim is proper for dismissal. *See Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1208 (7th Cir. 1980) (*pro se* plaintiff's mere conjecture that there has been a conspiracy is not enough to state a claim).

### C.     Retaliation For Exercising Freedom of Speech During Council Meeting

Brown alleges that Klinker retaliated against him for speaking at the October 1 council meeting in opposition of a smoking ban proposal. In order for Brown to establish a § 1983 retaliation claim based on the First Amendment, he must demonstrate that: (1) he engaged in constitutionally protected speech; (2) state actors took adverse action (or he suffered a deprivation that would likely deter First Amendment activity in the future); and (3) the adverse action was motivated at least in part as a response to his protected speech. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) (citing *Mosely*

*v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006)). Because there is no dispute that Brown's speech was constitutionally protected, and because the record shows that Klinker's phone call was in direct response to Brown's participation in the October 1, 2007 council meeting, the Court considers whether Klinker took adverse action against Brown.

In the analogous context of public employees who allege that their employers retaliated against them based on assertions of First Amendment rights, the Seventh Circuit has observed that a "§ 1983 case does not require an adverse employment action within the meaning of the antidiscrimination statutes, such as Title VII of the Civil Rights Act of 1964." *Mosely*, 434 F.3d at 533 (quoting *Spiegla v. Hull,* 371 F.3d 928, 941 (7th Cir. 2004)). Rather, "[a]ny deprivation under color of law that is likely to deter the exercise of free speech . . . is actionable." *Mosely*, 434 F.3d at 533 (quoting *Power v. Summers,* 226 F.3d 815, 820 (7th Cir. 2000)). The test is objective and asks whether a person of "ordinary firmness" would be deterred. *See Pieczynki v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989) (noting that petty harassment which is so trivial that a person of ordinary firmness would not be deterred from holding or expressing his beliefs does not violate the First Amendment) (citing *Bart v. Telford,* 677 F.2d 622, 624-25 (7th Cir. 1982) (explaining that an employer's "campaign of petty harassments" that included making fun of an employee for bringing a birthday cake to the office, may be sufficient to deter the exercise of First Amendment rights)).

It is true, that no adverse employment action has befallen Brown as a result of his political activism. But CityBus, Metzinger, and Collins are not named Defendants in this case and Brown does not allege that they took adverse action against him. Instead, the focus of the Court's inquiry is whether Klinker's calling and informing CityBus of Brown's political advocacy and demeanor before the council is likely to deter a person of ordinary firmness from exercising free speech rights.

16

Although informing an employer of an employee's political activism could deter speech in some instances, the circumstances of this case do not present with such a deterrent. Here, Brown appeared on local television news broadcasts and was shown opposing a smoking ban proposal before the council. Brown further invited the public to attend an informal debate that he organized, passed out literature regarding secondhand smoke to the mayor, the council members, and to the candidates running for the council seats, and collected 2,300 signatures in opposition to any ban. Based on the record, it is safe to say that Brown publically rallied support for his position throughout the community of Lafayette. Thus, even if Klinker called Metzinger about Brown's political activism, such a call would not threaten a person of ordinary firmness from speaking again, since the political activism was made public with little concern over whether others, including an employer, might discover the political advocacy.

Moreover, no person of ordinary firmness would feel deterred from speaking again in the future, on account of a single communication made to one's employer criticizing an employee's non-employment related behavior as threatening or seemingly unstable. Klinker's mere expression of his beliefs amounted to no more than isolated criticisms of Brown, which is insufficient to raise a genuine issue as to any constitutional violation. The Court finds that under these specific facts, no rational jury could find that the phone call amounted to actionable retaliation sufficient to deter free speech.

## II. Municipal Liability Under 42 U.S.C. § 1983

Brown alleges that Lafayette is responsible for the council members' alleged constitutional violations. In *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978), the Supreme Court held that

Congress intended municipalities and other local government units to be "persons" within the purview of § 1983, and thus amenable to suit under § 1983. While a municipality cannot be held liable under § 1983 on a *respondeat superior* theory, it can be held liable if the deprivation was caused by either (1) a municipality's express policy; (2) a widespread practice so permanent and well settled so as to constitute a custom or usage within the municipality; or (3) a person with final policymaking authority for the municipality. *See Montano v. City of Chi.*, 535 F.3d 558, 570 (7th Cir. 2008); *Sivard v. Pulaski County,* 17 F.3d 185, 188 (7th Cir. 1994). However, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996).

In moving for summary judgment, Defendants argued that because there was no constitutional violation by the council members, then there could be no violation by Lafayette. (Docket at 22, Defs.' Memo. in Support, p. 7) ("Without any Council action, real or imaginary, against him plaintiff has no claim against the City of Lafayette."); (Docket at 34, Defs.' Reply, p. 3-4) ("Without any Council action against him, there is no claim against the City of Lafayette under any theory," and "[a]s there is no conduct on behalf of the City or its employees that can be said [to] be sufficient to deter the exercise [of] First Amendment freedoms, there is [no] basis for this claim."). The Court agrees.

Because the undisputed facts reveal that the council members did not violate Brown's First Amendment rights or conspire to do so, Lafayette cannot be held liable for the same. *See Starzenski*, 87 F.3d at 879. Even so, the Court considers Brown's assertion that Lafayette has an unconstitutional "policy" which consists of the "acts or actions of Defendants against Plaintiff."

(Am. Complaint, ¶ 25).  The "acts" presumably refer to the council member's alleged silencing of Brown during the November 5 meeting and/or not advocating to let Brown speak, and the subsequent failure to conduct an investigation into Klinker's phone call to Metzinger (docket at 31 ¶¶ 14, 17).  However, no evidence supports Brown's position that Lafayette has a policy or custom of silencing speakers during council meetings, or of taking adverse action against public speakers so as to thwart their future participation in council meetings.  In fact, Brown admits that the opposite is true—or that, Lafayette has a "policy" of allowing public comment on any issues during the public comment portion of the council meeting, regardless of whether the issue was on the agenda. (Am. Complaint, ¶ 18).  The events of which Brown complains, an interruption at a council meeting and a single phone call that was presumably not investigated, are simply not enough to establish the requisite fault on the part of the municipality, or a causal connection between a 'policy' and some constitutional violation by suppressing Brown's right to free speech. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985); *Lanigan v. Vill. of E. Hazel Crest, Ill.,* 110 F.3d 467, 480 (7th Cir. 1997) (plaintiff should be able to direct the district court to the policy that he feels is unconstitutional and explain how the policy amounts to deliberate indifference to citizens' rights); *Donovan v. City of Milwaukee*, 17 F.3d 944, 954-55 (7th Cir. 1994).  Accordingly, summary judgment on the issue of municipal liability must be granted.

### III.  Liability under State Law

Brown alleges that in addition to Defendants' violation of his federal constitutional rights, Defendants violated the parallel provisions under the Indiana Constitution, committed defamation, and tortiously interfered with a business relationship.  Since this Court has granted summary

judgment in favor of Defendants on all claims over which it had original jurisdiction, the Court has the discretion to remand the remaining state claims to Tippecanoe County Circuit Court pursuant to 28 U.S.C. § 1367(c)(3). *See Bean v. Wis. Bell, Inc.*, 366 F.3d 451, 456 (7th Cir. 2004).

Brown's federal claims have failed to survive summary judgment and there is no reason to believe that the state law claims would be more expediously or fairly determined in this Court rather than in the appropriate state court. *See Wright v. Assoc. Ins. Cos., Inc.*, 29 F.3d 1244, 1250 (7th Cir. 1994) (the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over state law claims rather than resolving them on the merits). Therefore, Brown's state law claims are not extinguished, but are remanded to the state trial court from where this case was once removed.

## CONCLUSION

The undisputed facts show that Brown has no meritorious federal claims against the Defendants. Brown's First Amendment rights were not violated and a conspiracy to violate the same did not exist during the October 1 or November 5 council meetings. Furthermore, a person of ordinary firmness would not feel deterred from speaking again merely on account of a single telephone call made to an employer to discuss the person's non-employment related, publicized behavior during a council meeting. Because no genuine issues of material fact exist as to Brown's claims that he was unconstitutionally silenced or retaliated against for voicing his beliefs before the Lafayette City Council, summary judgment is granted in favor of the Defendants as to all of Brown's federal claims. Having dismissed the claims over which this Court had original jurisdiction, the Court declines to exercise jurisdiction over Brown's state claims.

Based on the foregoing, the Court **DENIES IN PART and GRANTS IN PART** Defendants' Motion to Strike (docket at 33), **GRANTS** Defendants' Motion for Summary Judgment (docket at 21) as to Brown's federal law claims, and **REMANDS** Brown's state law claims to state court.

The Clerk is directed to enter judgment in favor of the Defendants City of Lafayette, Kevin Klinker, Ron Campbell, Lon Heide, Steve Meyer, Melissa Weast-Williamson, Michael Smith, Jack Rhoda, Perry Brown, and Dennis Probasco on all of Brown's federal claims, and remand the case to the Tippecanoe County Circuit Court for consideration of Brown's state claims.

SO ORDERED.

DATED: April 16, 2010

                        s/ William C. Lee
                      WILLIAM C. LEE, JUDGE
                      UNITED STATES DISTRICT COURT